No. _____

*(Relates to Notice of Appeal filed Jan. 9, 2026 (Doc. 61))*

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

-------------------------------------------------------------------------------

EHIREMEN BENNARD ERIAKHA,

PLAINTIFF-APPELLANT,

v.

UNIVERSITY OF MISSISSIPPI, ET AL.,

DEFENDANTS-APPELLEES.

*U.S. COURT OF APPEALS*
**RECEIVED**
**Jan 13, 2026**
*FIFTH CIRCUIT*

-------------------------------------------------------------------------------

ON APPEAL FROM THE

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF MISSISSIPPI, OXFORD DIVISION

CIVIL ACTION NO. 3:25-CV-00226-MPM-JMV (LEAD CASE)

(CONSOLIDATED WITH CIVIL ACTION NO. 3:25-CV-00250-DMB-RP)

-------------------------------------------------------------------------------

**APPELLANT'S OPPOSED EMERGENCY MOTION FOR**

**ADMINISTRATIVE STAY AND, IN THE ALTERNATIVE, INJUNCTION**

**PENDING APPEAL**

*(Fed. R. App. P. 8(a); 5th Cir. R. 27.3)*

## CERTIFICATE OF INTERESTED PARTIES

*(5th Cir. R. 28.2.1)*

Pursuant to **Fifth Circuit Rule 28.2.1**, Plaintiff–Appellant Ehiremen Bennard Eriakha, appearing pro se, certifies that the following persons and entities have an interest in the outcome of this appeal. This certificate is submitted solely to assist the Court in determining whether recusal or disqualification is required.

**Plaintiff-Appellant**:
Ehiremen Bennard Eriakha (*pro se*)

**Defendants-Appellees:**
University of Mississippi
University of Mississippi School of Pharmacy
Board of Trustees of State Institutions of Higher Learning of the State of Mississippi
Dr. Yi Yang, Chair, Department of Pharmacy Administration
Dr. Marie Barnard, Graduate Program Coordinator, Pharmacy Administration
Dr. Annette Kluck, Dean of the Graduate School
Dr. Yinan Huang, Faculty Member, Pharmacy Administration

**District Judge:**
Hon. Michael P. Mills, Senior United States District Judge

**Magistrate Judge:**
Hon. Jane M. Virden, United States Magistrate Judge

**Counsel for Defendants-Appellees:**
Paul B. Watkins, Esq.
Brooke Jackson, Esq.
Mayo Mallette PLLC
Oxford, Mississippi

2

**CORPORATE DISCLOSURE STATEMENT**

No publicly held corporation owns 10% or more of the stock of any party to this proceeding. No party is a subsidiary or affiliate of any publicly held corporation.

Respectfully submitted this 13th day of January, 2026,

/s/ Ehiremen Bennard Eriakha
Ehiremen Bennard Eriakha
Plaintiff-Appellant, *pro se*
1802 Jackson Ave. W., Apt. 83
Oxford, MS 38655
Tel: (662) 281-4676
Email: eriakhabernard@gmail.com

## STATEMENT PURSUANT TO FIFTH CIRCUIT RULES 27.3 AND 27.4

### *(Need for Action Within a Specified Time)*

Pursuant to ***Fifth Circuit Rules 27.3 and 27.4***, emergency action is required because record-based consequences will occur on or before **January 20, 2026**, before this Court can complete meaningful review of this appeal from final judgment. Absent interim relief, those time-locked irreparable harms will mature during the pendency of the appeal and risk rendering any eventual appellate relief ineffective as a practical matter. (***Dkt. 55***).

## I.     Procedural Posture and Record-Based Emergency Predicate

This motion arises from the district court's January 7, 2026 final judgment dismissing the action with prejudice and denying Appellant's pending ***Rule 65*** motions as moot. (***Doc. 58***). Appellant filed a timely Notice of Appeal on January 9, 2026. (***Doc. 61***).

The emergency is record-based and driven by fixed dates reflected on the district-court docket. Those date-certain harms will mature during this appeal from final judgement, before this Court can complete meaningful review, absent temporary preservation of the status quo ante.

## II.     Impracticability of Further Resort to the District Court

Further resort to the district court is impracticable. Appellant sought emergency ***Rule 65*** relief beginning September 18, 2025; briefing was complete by October 9, 2025; and Appellant sought expedited adjudication tied to date-certain deadlines placed on the record. (***Dkts. 15–17, 31–37, 46, 55***).

The district court entered final judgment and denied the ***Rule 65*** requests as moot. (***Dkt 58***). With record-based consequences maturing on or before **January 20, 2026**, there is no practical opportunity to obtain effective relief below in time to prevent the harms at issue. ***Rule 8(a)(2)*** therefore authorizes emergency interim relief in this Court.

## III.    Date-Certain Irreparable Harms Requiring Immediate Action

Absent interim relief, adverse irreparable harms will occur on or before **January 20, 2026**, before this Court can complete meaningful review of the appeal from final judgment, rendering any eventual relief ineffective as a practical matter. The record identifies fixed academic-calendar consequences that would mature during the pendency of appellate review. (***Dkt. 55***).

The record-based harms include:

- **Spring 2026 registration exclusion** (**Jan. 20, 2026**): Appellant will be excluded from Spring 2026 registration and the enrollment standing necessary to maintain

continuous enrollment. Once the semester begins without enrollment, later appellate relief cannot readily reconstruct the lost academic term.

- **Academic progression tied to Spring 2026 calendar**: Loss of enrolled standing interrupts supervision, coursework, and program progression tied to the Spring 2026 academic cycle, producing harms that are not readily remediable through later appellate reversal.

- **Immigration consequences tied to enrollment classification**: The record reflects immigration-status consequences that accrue once loss of enrolled status is reflected through SEVIS-related processes. Temporary preservation of enrollment classification prevents further accrual while appellate review proceeds. (*Dkt. 55*).

- **Financial enforcement / collections**: The record reflects notice of financial enforcement and referral to collections. Once third-party collection processes are initiated, associated consequences cannot be readily undone by later appellate relief. (*Dkt. 55*).

These harms are time-locked, irreparable, and will mature before this Court can complete meaningful review absent interim, status-quo-ante preserving relief.

**IV.    Nature of Relief Requested**

Appellant seeks narrow, temporary relief solely to preserve the effectiveness of appellate review. Appellant does not request merits adjudication.

## A. Administrative Stay:

Appellant requests a brief administrative stay to preserve the status quo ante while the Court considers this emergency motion. The stay is non-dispositive and limited to preventing date-certain irreparable harms from maturing during orderly consideration of the ***Rule 8*** request.

## B. Injunction Pending Appeal:

In the alternative, Appellant requests a narrowly tailored injunction pending appeal limited to preserving the last peaceable, uncontested condition prior to the challenged actions—Appellant's enrollment classification and related administrative standing necessary for Spring 2026 registration and associated reporting—pending disposition of this appeal from final judgement. This relief is provisional and directed only to preventing time-locked consequences from maturing before appellate review can be completed.

## V.    Rule 27.3 Certification

This emergency motion is submitted in good faith and not for purposes of delay. Appellant has provided notice and served opposing counsel contemporaneously with filing.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES ................................................................. 2

STATEMENT PURSUANT TO FIFTH CIRCUIT RULES 27.3 AND 27.4 ................................. 4

JURISDICTIONAL STATEMENT ................................................................. 9

STATEMENT OF THE ISSUE PRESENTED ................................................................. 10

STATEMENT OF RELIEF SOUGHT ................................................................. 11

PROCEDURAL BACKGROUND AND APPELLATE POSTURE ................................................. 13

LEGAL STANDARD ................................................................. 16

ARGUMENT ................................................................. 18

CONCLUSION AND RELIEF REQUESTED ................................................................. 36

CERTIFICATE OF SERVICE ................................................................. 39

CERTIFICATE OF CONFERENCE ................................................................. 40

CERTIFICATE OF COMPLIANCE ................................................................. 41

RULE 27.3 CERTIFICATION ................................................................. 43

## JURISDICTIONAL STATEMENT

### I.     Appellate Jurisdiction (*28 U.S.C. § 1291*)

This appeal arises from the district court's January 7, 2026 Memorandum Opinion and Final Judgment dismissing this action with prejudice and denying Appellant's pending Rule 65 motions as moot. (***Dkt. 58***). The January 7 judgment is a final decision within the meaning of *28 U.S.C. § 1291*. *See Catlin v. United States, 324 U.S. 229, 233 (1945)*.

Appellant filed a timely Notice of Appeal on January 9, 2026. (***Dkt. 61***).

### II.     Authority to Grant Interim Relief Pending Appeal

Pending this appeal from final judgment, this Court has authority to grant interim relief necessary to preserve the practical effectiveness of its appellate jurisdiction. *See Nken v. Holder, 556 U.S. 418, 427 (2009)*; *Scripps-Howard Radio, Inc. v. FCC, 316 U.S. 4, 9–10 (1942)*. Appellant seeks only temporary, non-merits relief preserving the last peaceable, uncontested administrative status quo ante pending disposition of this appeal.

Emergency interim relief is warranted because record-based, time-sensitive administrative consequences will occur during the pendency of appellate review absent preservation of the status quo ante.

### III.     Procedural Basis (Fed. R. App. P. 8(a)(2))

9

This motion is properly presented under *Fed. R. App. P. 8(a)(2)* following entry of final judgment. Appellant sought emergency *Rule 65* relief in the district court beginning September 18, 2025; the renewed motions were fully briefed by October 9, 2025. (*Dkts. 15–17, 31–37*).

On January 7, 2026, the district court entered final judgment and denied the pending *Rule 65* motions as moot. (*Dkt. 58*). In this posture, further resort to the district court is impracticable within the meaning of *Rule 8(a)(2)(A)*, and the district court has denied interim relief within the meaning of *Rule 8(a)(2)(A)(ii)*.

Appellant therefore seeks (A) a brief administrative stay pending this Court's consideration of the emergency motion and, alternatively, (B) a narrowly tailored injunction pending appeal preserving the status quo ante during this appeal from final judgment.

## STATEMENT OF THE ISSUE PRESENTED

Whether, pending Appellant's appeal from the district court's January 7, 2026 final judgment dismissing this action with prejudice and denying the pending *Rule 65* motions as moot (*Dkt. 58*), this Court should grant interim relief under *Fed. R. App. P. 8(a)(2)*—in the form of a brief administrative stay or, alternatively, an injunction pending appeal—solely to preserve the last peaceable, uncontested administrative status quo ante and the practical effectiveness of appellate review.

## STATEMENT OF RELIEF SOUGHT

Appellant seeks narrow, provisional relief under *Fed. R. App. P. 8(a)(2)* to preserve the practical effectiveness of appellate review pending disposition of this appeal from final judgment. Appellant does not seek merits adjudication.

### A. Primary Relief — Administrative Stay Pending Consideration

Appellant respectfully requests a brief administrative stay solely to maintain the last peaceable, uncontested administrative status quo ante while this Court considers the request for an injunction pending appeal. The stay should be limited in duration to the Court's disposition of this emergency motion, or such period as the Court directs.

For purposes of this motion, the "*status quo ante*" is Appellant's continuous-enrollment classification and associated institutional standing necessary for Spring 2026 registration and related administrative reporting, as it existed immediately prior to the challenged status change and downstream administrative consequences.

During the administrative stay, Appellees should be directed, for administrative purposes only, to refrain from implementing, enforcing, or communicating any further adverse administrative action predicated on the challenged status change.

### B. Alternative Relief — Injunction Pending Appeal

In the alternative, Appellant requests a narrowly tailored injunction pending appeal preserving the same status quo ante during the pendency of this appeal from final

judgment. The requested injunction is provisional, non-merits, and non-dispositive, and is sought solely to prevent appeal-defeating consequences from occurring before this Court can complete meaningful review.

The injunction should direct Appellees, for administrative purposes only, to maintain Appellant's continuous-enrollment classification and associated institutional standing necessary for Spring 2026 registration and related administrative reporting, and to refrain from further enforcement or third-party reporting predicated on the challenged status change while appellate review proceeds.

## C. Expedited Consideration

Appellant requests expedited consideration because record-based Spring 2026 registration consequences begin on or before **January 20, 2026**.

## D. Bond or Security

No bond should be required, or any bond should be nominal, because the requested relief is limited to temporary administrative maintenance of the status quo ante, is fully reversible if Appellees prevail, and does not impose a material risk of monetary loss. ***See Janvey v. Alguire, 647 F.3d 585, 600 (5th Cir. 2011)***.

## PROCEDURAL BACKGROUND AND APPELLATE POSTURE

### A. Case Filing and Initial Rule 65 Filings

Appellant filed this action on August 25, 2025 in the United States District Court for the Northern District of Mississippi. (***Dkt. 1***). The case was assigned to Chief Judge Debra M. Brown and Magistrate Judge Roy Percy, Case No. 3:25-cv-00250-DMB-RP. (***Dkt. 4***).

On September 8, 2025, Appellant filed an emergency motion for temporary restraining order and motion for preliminary injunction. (***Dkts. 7, 9***). On September 11, 2025, the district court denied the emergency ***Rule 65*** motions without prejudice on procedural grounds. (***Dkt. 13***).

### B. Renewed Rule 65 Motions; Fully Briefed and Ripe

On September 18, 2025, Appellant filed renewed motions for a temporary restraining order and preliminary injunction under ***Rule 65***. (***Dkts. 15, 16***). Appellees filed oppositions on October 2, 2025, and Appellant replied on October 9, 2025. (***Dkts. 31, 33–35, 37***). The renewed ***Rule 65*** motions were therefore fully briefed and ready for decision as of October 9, 2025. (***Dkt. 37***).

No further briefing or factual development was requested before final judgment.

### C. Discovery Stay Did Not Resolve the Emergency Motions

Appellees moved to dismiss on October 1, 2025. (***Dkt. 28***). On October 2, 2025, the magistrate judge stayed discovery and ***Rule 16*** obligations pending resolution of the immunity-based motion to dismiss. (***Dkt. 30***). The stay order did not adjudicate or otherwise dispose of the pending ***Rule 65*** motions. (***Dkts. 15, 16, 30***).

## D. Continued Non-Adjudication Through Consolidation and Reassignment

On November 3, 2025, Appellant moved to expedite a ruling on the pending ***Rule 65*** motions. (***Dkt. 46***). No ruling issued.

On November 17, 2025, the district court consolidated this action with a related matter and reassigned the case to Senior District Judge Michael P. Mills. (***Dkt. 49***). The consolidation order acknowledged that the renewed ***Rule 65*** motions remained pending. (***Dkt. 49***). No interim relief issued before or after consolidation. (***Dkt. 58***).

## E. Record Notice of Materialized Harms

On December 12, 2025, Appellant filed record notice identifying time-sensitive irreparable harms while the ***Rule 65*** motions remained pending. (***Dkt. 51***). Appellant's filings identified fixed Spring 2026 enrollment deadlines and related compliance requirements. (***Dkts. 51, 55***). The record reflects that the program-status change took effect on December 15, 2025 while the emergency motions remained unadjudicated. (***Dkt. 55***).

## F. Prior Appellate Proceedings Related to Non-Adjudication

On December 17, 2025, Appellant filed a petition for writ of mandamus in this Court seeking adjudication of the pending emergency matters. (***Dkt. 54***). Appellant also filed a notice of appeal challenging the district court's continued non-adjudication of emergency relief. (***Dkt. 53***). On December 31, 2025, this Court dismissed Appeal No. 25-60708 concluding that the record then before it lacked an express, date-certain request for district-court adjudication sufficient to establish interlocutory jurisdiction.

Following that dismissal, Appellant moved in the district court for immediate adjudication of the pending ***Rule 65*** motions by January 5, 2026. (***Dkt. 55***). The January 5, 2026 deadline passed without a merits ruling on the renewed ***Rule 65*** motions prior to entry of final judgment. (***Dkts. 55, 58***).

## G. Emergency Filing in This Court; Entry of Final Judgment; Notice of Appeal

On January 7, 2026, at approximately 11:00 a.m., Appellant filed an emergency motion in this Court in Case No. 26-60007 seeking interim relief tied to time-sensitive harms identified in the district-court record. (***5th Cir. Dkt.***). Later that day, at approximately 2:19 p.m., the district court entered final judgment dismissing the action with prejudice, and denying the pending ***Rule 65*** motions as moot. (***Dkt. 58***).

Appellant filed a Notice of Appeal from the final judgment on January 9, 2026. (***Dkt. 61***). Appellant also filed a ***Rule 10(b)*** statement reflecting that no hearing transcript is required because the case was resolved on the motion to dismiss. (***Dkt. 62***).

## H. Current Appellate Posture

This emergency motion proceeds under ***Fed. R. App. P. 8(a)(2)*** in an appeal from the district court's final judgment. (***Dkts. 58, 61***). Appellant seeks temporary, non-merits relief pending disposition of the appeal. (***Dkts. 55, 61***).

## <u>LEGAL STANDARD</u>

### I.    Appellate Posture and Authority

This emergency motion seeks temporary interim relief pending appeal from the district court's January 7, 2026 final judgment dismissing this action with prejudice and denying Appellant's pending ***Rule 65*** motions as moot. (***Dkt. 58***). Appellant filed a timely Notice of Appeal on January 9, 2026. (***Dkt. 61***).

Pending a final-judgment appeal under ***28 U.S.C. § 1291***, this Court has authority to grant interim relief to preserve the effectiveness of appellate review. ***Nken v. Holder, 556 U.S. 418, 426–27 (2009)***; ***Scripps-Howard Radio, Inc. v. FCC, 316 U.S. 4, 9–10 (1942)***. Appellant seeks only non-merits, non-dispositive relief under ***Fed. R. App. P. 8(a)(2)***.

## II.    Administrative Stay Pending Consideration

An administrative stay is a short-term, non-merits order issued to preserve the status quo ante while the Court considers an emergency application for further relief. *United States v. Texas, 144 S. Ct. 797, 799 (2024)*. It requires no merits determination and serves to prevent intervening change before the Court can act.

Where time-sensitive consequences may occur before orderly consideration is practicable, an administrative stay is appropriate to maintain stability pending resolution of the *Rule 8* request.

## III.    Injunction Pending Appeal (Rule 8 Standard)

Alternatively, the Court may grant an injunction pending appeal under *Fed. R. App. P. 8(a)(2)*. The Court considers: (1) likelihood of success on the merits, or at minimum serious legal questions; (2) irreparable injury absent relief; (3) balance of equities; and (4) the public interest. *Nken, 556 U.S. at 434*; *Ruiz v. Estelle, 650 F.2d 555, 565 (5th Cir. 1981)*.

In the appellate posture, the inquiry is whether interim relief is necessary to preserve the effectiveness of appellate review, not whether the movant is likely to prevail on the merits. *Janvey v. Alguire, 647 F.3d 585, 595–96 (5th Cir. 2011)*. A "substantial case" requires serious legal questions rather than a likelihood of success, *Ruiz v. Estelle, 650 F.2d 555, 565 (5th Cir. 1981)*, and irreparable harm includes

17

consequences that would render appellate relief ineffectual even if the appellant ultimately prevails. ***Campaign for S. Equality v. Bryant, 773 F.3d 55, 57 (5th Cir. 2014)***.

## ARGUMENT

Appellant seeks narrow interim relief under ***Fed. R. App. P. 8(a)(2)*** pending appeal from the district court's final judgment. The requested relief is temporary, reversible, and non-dispositive. It is sought only to preserve the status quo ante (*as defined supra*) during this Court's review.

The record identifies fixed Spring 2026 administrative consequences beginning **January 20, 2026**. Absent interim relief, those consequences will take effect while this appeal is pending, thereby defeating the practical availability of later relief. ***See Nken v. Holder, 556 U.S. 418, 434 (2009)***; ***Janvey v. Alguire, 647 F.3d 585, 595–96 (5th Cir. 2011)***.

## I.   APPELLANT PRESENTS A SUBSTANTIAL CASE AND, AT MINIMUM, SERIOUS LEGAL QUESTIONS WARRANTING PRESERVATION OF THE STATUS QUO ANTE

***Rule 8*** relief is warranted because Appellant presents serious legal questions on appeal. ***See Nken, 556 U.S. at 434***; ***Janvey, 647 F.3d at 595–96***.

## A. DENIAL OF FULLY BRIEFED RULE 65 MOTIONS AS MOOT PRESENTS SERIOUS LEGAL QUESTIONS

### 1. The mootness-by-dismissal disposition presents serious questions warranting interim preservation.

This appeal arises from the district court's January 7, 2026 final judgment dismissing the action with prejudice and denying Appellant's fully briefed *Rule 65* motions as moot. Appellant presents serious legal questions whether that disposition foreclosed any timely mechanism to prevent record-identified, time-sensitive consequences from maturing while appellate review proceeds.

The sequencing underscores the need for preservation. On January 7, 2026, Appellant filed an emergency motion in this Court seeking interim relief tied to record-based deadlines. Later that day, the district court entered final judgment and denied the *Rule 65* motions as moot. Absent interim relief, the record-based consequences will mature before this Court can exercise meaningful review.

### 2. Appellant acted with diligence; the emergency is record-based and time-locked.

The docket reflects diligence. Appellant renewed *Rule 65* relief on September 18, 2025; the motions were fully briefed by October 9, 2025; and Appellant sought

expedited adjudication tied to record-identified deadlines while effective relief remained available. (***Dkts. 15–16, 37, 46, 55***).

After this Court dismissed Appeal No. 25-60708 on December 31, 2025, Appellant moved in the district court for immediate adjudication by January 5, 2026 based on record-identified compliance irreparable harms. (***Dkt. 55***). The January 5 deadline passed without a merits ruling on the ***Rule 65*** motions before entry of final judgment. (***Dkts. 58***).

### 3. Rule 8 relief is warranted to preserve the pre-deprivation administrative posture pending appeal.

In these circumstances, ***Rule 8*** relief is warranted to preserve the last peaceable, uncontested administrative posture pending disposition of this appeal from final judgment. Without prejudging the merits, temporary preservation is necessary to prevent appeal-defeating consequences from maturing before appellate review can operate meaningfully.

## B. IMPROPER FACT RESOLUTION AND ADVERSE INFERENCES AT THE RULE 12 STAGE PRESENT SERIOUS QUESTIONS

This appeal presents serious questions whether the dismissal order resolved contested factual characterizations in Appellees' favor at the pleading stage. ***Rule 12*** requires acceptance of well-pleaded allegations as true and reasonable inferences for

the nonmovant, not narrative selection based on disputed characterizations. *Twombly, 550 U.S. at 555–56*; *Iqbal, 556 U.S. at 678*.

**1. The order presents serious questions whether it treated disputed "record" characterizations as dispositive.**

The order stated that it would accept allegations as true only "so long as it does not contradict the record," and then treated that premise as authority to adopt Appellees' version of disputed events. But Appellant specifically contested the intent-laden labels and characterizations on which Appellees relied—including the framing of events as "refusal" and "insubordination"—and those disputes go to motive, context, and the nature of the challenged action.

At the pleading stage, incorporated materials may be considered only for limited purposes; they may not be used to override plausible allegations or to resolve disputed inferences against the plaintiff. *Twombly, 550 U.S. at 555–56*; *Iqbal, 556 U.S. at 678*. Appellant therefore raises serious questions whether the order effectively converted *Rule 12* review into merits-like resolution of contested factual framing.

**2. The order presents serious questions whether it recast a pleaded procedural dispute as "refusal," and drew adverse inferences.**

The complaint alleged a policy- and process-based dispute over how the Abilities Transcript—a developmental mentoring instrument—was to be completed under the Department's framework. The order nevertheless recharacterized that dispute as a "refusal" to comply and treated that label as dispositive across multiple claims.

*Rule 12* does not permit intent-laden relabeling that resolves motive, context, and causation against the pleader. *Iqbal, 556 U.S. at 678*. Appellant therefore raises serious questions whether the order adopted Appellees' contested narrative to defeat plausibility, rather than evaluating the complaint's allegations under the *Rule 12* standard.

**3. The order presents serious questions whether it treated a developmental mentoring instrument as "scholastic standards," contrary to the governing materials.**

The order characterized the Abilities Transcript dispute as a failure to meet "scholastic standards," and relied on that framing to treat the challenged measures as purely "academic." The incorporated governing materials, however, describe the Abilities Transcript as a developmental mentoring instrument administered through a structured, consensus-based mentoring process—not an academic performance evaluation. (*Exhibits Q, S*).

At minimum, whether the challenged measures were "academic" in nature or functioned as status-altering sanctions presents an inference-bound issue. Appellant therefore raises serious questions whether the order resolved that issue at *Rule 12* by adopting a litigation characterization inconsistent with the governing materials and the complaint's allegations.

## C. QUALIFIED IMMUNITY ANALYSIS PRESENTS SERIOUS LEGAL QUESTIONS

### 1. The order resolved qualified immunity through adverse inferences at the pleading stage.

This appeal from final judgment presents serious questions whether the district court resolved qualified immunity by crediting disputed characterizations and drawing inferences against Appellant at the *Rule 12* stage. Qualified immunity may be granted on a motion to dismiss only where the complaint fails, on its face, to plausibly allege a constitutional violation of clearly established law. *Backe v. LeBlanc, 691 F.3d 645, 648 (5th Cir. 2012)*.

The order treated Appellant's disputes concerning the characterization of key events as immaterial. But *Rule 12* requires acceptance of well-pleaded allegations and reasonable inferences in the nonmovant's favor, not adoption of a competing

narrative. *Twombly, 550 U.S. at 555–56*; *Iqbal, 556 U.S. at 678*; *Erickson v. Pardus, 551 U.S. 89, 94 (2007)*.

## 2. The order applied "clearly established" at an impermissibly granular level.

The appeal also presents serious questions whether the order demanded precedent "squarely governing" the precise fact pattern, rather than applying the fair-notice inquiry. The "clearly established" analysis does not require a case on all fours where existing law gave officials fair warning that the pleaded conduct was unlawful. *Hope v. Pelzer, 536 U.S. 730, 741 (2002)*.

## 3. The order rejected settled constitutional principles as too "general" at the threshold stage.

The order further presents serious questions whether it treated established constitutional principles as too "general" in a manner that became dispositive on qualified immunity at the pleading stage. Appellant relied on settled doctrine concerning retaliation for protected petitioning and association, procedural due process limits on punitive deprivations, and equal protection against intentional discrimination.

On a motion to dismiss, Appellant was required to plead a plausible constitutional violation and show that the unlawfulness was apparent in light of existing law—not

to identify a fact-identical case. *Iqbal, 556 U.S. at 678*; *Hope, 536 U.S. at 741*. Dismissal with prejudice on qualified-immunity grounds in this procedural posture therefore presents substantial issues for review.

## D. FIRST AMENDMENT ANALYSIS PRESENTS SERIOUS LEGAL QUESTIONS

**1. The dismissal order presents serious questions whether the retaliation claims were rejected through claim recharacterization at the pleading stage.**

This dismissal-order appeal presents serious questions whether the district court disposed of Appellant's First Amendment retaliation claims by treating Appellees' asserted compliance rationale as dispositive at the *Rule 12* stage. The complaint alleged protected petitioning and reporting activity and pleaded retaliatory motive and causation.

The order's framing of the dispute as a transcript-related "noncompliance" matter raises serious questions whether the pleaded protected activity and retaliatory intent were displaced rather than evaluated under the governing plausibility standard.

**2. The dismissal order presents serious questions whether protected petitioning and complaints were treated as unprotected "insubordination."**

The appeal presents serious questions whether the order treated Appellant's complaints and procedural objections as unprotected "insubordination," based on Appellees' characterization of the underlying dispute. Petitioning and complaint activity directed to government decision-making may constitute protected activity even where the government asserts authority to impose a requirement. ***Brady v. Houston Indep. Sch. Dist., 113 F.3d 1419, 1424 (5th Cir. 1997)***.

**3. The dismissal order presents serious questions whether intimate-association rights were analyzed at an improperly narrow level.**

The appeal presents serious questions whether the order rejected Appellant's intimate-association theory on the ground that fact-specific precedent did not "squarely govern" the precise family relationship alleged. The First Amendment protects close familial association as a general constitutional principle. ***Roberts v. U.S. Jaycees, 468 U.S. 609, 619–20 (1984)***.

Appellant raises serious questions whether the right was defined too narrowly at the pleading stage, such that the absence of fact-identical precedent became dispositive of plausibility.

**4. The dismissal order presents serious questions whether Mt. Healthy causation was resolved on the pleadings.**

Finally, the appeal presents serious questions whether the order resolved causation by crediting Appellees' asserted justification as determinative at *Rule 12*. The Mt. Healthy "same decision" inquiry is fact-bound and ordinarily turns on evidence and permissible inferences. ***Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)***.

Appellant raises serious questions whether the order effectively resolved disputed motive, pretext, and causation at the threshold stage rather than determining whether the complaint plausibly alleged retaliation.

## E. EQUAL PROTECTION ANALYSIS PRESENTS SERIOUS LEGAL QUESTIONS

### 1. The dismissal order required comparator specificity beyond Rule 12 at the pleading stage.

The appeal presents serious questions whether the dismissal order rejected Appellant's Equal Protection claim by requiring identification of a fact-specific, similarly situated comparator at *Rule 12*. At this stage, Appellant was required to plead facts supporting a plausible inference of differential treatment, not to plead confidential comparator circumstances uniquely held by the University. ***See Iqbal, 556 U.S. at 678***.

## 2. Exhibit O plausibly pleads differential treatment within an identified similarly situated cohort.

The order dismissed the Equal Protection claim on the ground that Appellant "*points to no specific person*" and alleged only conclusory unequal treatment. That conclusion is difficult to reconcile with the record. Appellant submitted the Department's Fall 2025 Graduate Student Developmental Mentor Assignment roster (***Exhibit O***), which identifies a defined cohort of similarly situated department's doctoral mentees and reflects that Appellant alone was assigned a designated co-mentoring structure involving the Department Chair.

This Court recognizes that discriminatory differential treatment may be shown through comparator allegations or other facts supporting a reasonable inference of unequal treatment. ***Wallace v. Tex. Tech Univ., 80 F.3d 1042, 1047 (5th Cir. 1996).***

***Exhibit O*** supplies a concrete factual basis from which unequal treatment may be inferred and warrants review on appeal.

## F. DUE PROCESS ANALYSIS PRESENTS SERIOUS LEGAL QUESTIONS

## 1. The dismissal order presents serious questions whether the challenged measures were treated as purely "academic" to defeat due-process protections.

The dismissal order treated the challenged actions as a routine "academic" matter and dismissed the due-process claims on that basis. Due process turns on the nature and effect of the deprivation, not the label applied to it. ***Dixon v. Alabama State Bd. of Educ., 294 F.2d 150, 157 (5th Cir. 1961)***.

Appellant plausibly alleged a status-altering deprivation at a public institution that carried consequences beyond academic evaluation. At the pleading stage, the court was required to accept those allegations and draw reasonable inferences in Appellant's favor.

**2. The dismissal order presents serious questions whether protected interests were rejected at an improper level of generality.**

The order relied on cases involving grades and academic judgments to conclude no protected property interest was implicated. Appellant plausibly alleged a deprivation involving institutional status and associated program standing, which is analytically distinct from a challenge to academic evaluation.

Appellant also alleged an employment-related deprivation tied to loss of a graduate assistantship. The order presents serious questions whether it failed to address whether governing rules or understandings created a property interest requiring pre-deprivation process. ***Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538–39, 542–46 (1985)***.

**3. The dismissal order presents serious questions whether notice was treated as a substitute for the procedural protections alleged to be required.**

The order relied in part on the premise that Appellant had notice of potential consequences. But notice alone does not satisfy due process where the claim is denial of the procedures alleged to be required before a status-altering deprivation. ***Dixon, 294 F.2d at 157***.

Appellant plausibly alleged that the Department's stated Abilities Transcript procedures required a consensus-based meeting process (***Exhibits Q and S***), and that adverse action was imposed without adherence to university procedures. ***Dixon v. Alabama State Bd. of Educ., 294 F.2d 150, 157 (5th Cir. 1961)***. Those allegations, taken as true, state a viable due-process theory at the pleading stage.

## G. INTERNAL INCONSISTENCIES IN THE DISMISSAL ORDER PRESENT SERIOUS LEGAL QUESTIONS

The dismissal order applies shifting legal characterizations across claims in a manner that materially affects plausibility review and immunity analysis.

**1. Official-capacity prospective-relief analysis was effectively merged into individual-capacity immunity reasoning.**

The order recognized that Appellant sought prospective official-capacity relief cognizable under Ex parte Young, yet its analysis repeatedly tracked qualified-

immunity reasoning applicable only to individual-capacity damages claims. That approach raises a serious appellate question whether the availability of prospective relief was effectively foreclosed through a doctrine that does not apply to it. ***See Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002)***.

This matters because the appeal concerns whether the complaint plausibly alleges an ongoing federal-law violation remediable through prospective relief, independent of individual-capacity immunity defenses.

**2.  The order applied inconsistent and heightened specificity demands across claims.**

The order rejected constitutional claims on qualified-immunity grounds by requiring precedent "squarely governing" the specific fact pattern, while also treating established constitutional principles as too "general" to provide fair notice. In the same opinion, the Equal Protection claim was dismissed for failure to plead a comparator at a level of detail that presupposes access to information largely within the University's control.

These rulings present a substantial appellate question whether the order effectively imposed heightened, claim-by-claim specificity requirements inconsistent with ***Rule 8*** notice pleading and the plausibility framework of Twombly and Iqbal. ***See Twombly, 550 U.S. at 555–56; Iqbal, 556 U.S. at 678***.

31

**3. Dismissal with prejudice, without a tailored opportunity to amend, reinforces the procedural irregularity.**

The order dismissed the case with prejudice while relying on perceived pleading deficiencies and specificity gaps. That disposition presents a substantial appellate question whether the court should have afforded at least one opportunity to amend— particularly where the stated defects concerned detail, comparator specificity, and articulation of legal theories rather than legal impossibility.

## II.   ABSENT INTERIM RELIEF, APPELLANT WILL SUFFER IRREPARABLE HARM

### A. Record-Based, Time-Locked Harms Are Imminent or Continuing

**1. Program-status change took effect while Rule 65 motions remained pending (effective December 15, 2025).**

The record reflects a program-status change implemented effective December 15, 2025. (**Dkt. 55**). That change altered Appellant's enrollment classification and triggered downstream academic and administrative consequences that continue to accrue during this appeal from final judgment.

**2. Collections referral consequences attached (January 8, 2026).**

The record reflects notice that Appellant's student account would be referred to collections absent payment by January 8, 2026. (**Dkt. 55**). Once referral occurs,

third-party reporting effects may follow and cannot be fully unwound through later appellate relief.

### 3. Spring 2026 registration and enrollment consequences will mature on a fixed academic calendar (January 20, 2026).

The record reflects that Spring 2026 classes begin **January 20, 2026**. If Appellant remains excluded through semester start and the registration/add period, a break in continuous enrollment and supervised progress will occur and cannot be retroactively restored as a practical matter.

### 4. SEVIS/ISSS reporting consequences continue to accrue by operation of institutional reporting timelines.

The record reflects ISSS communications identifying SEVIS/F-1 compliance consequences tied to Appellant's loss of enrolled status and related certification requirements. (***Dkt. 55***). Once adverse status events are entered or transmitted through institutional reporting channels, restoration depends on discretionary administrative processing and cannot be guaranteed through later appellate relief.

## B. The Harm Is Non-Compensable and Risks Practical Nullification of Appellate Relief

Irreparable harm exists where denial of interim relief risks rendering any eventual appellate remedy ineffectual as a practical matter. ***Janvey, 647 F.3d at 596***. That

standard is satisfied here because the record identifies fixed academic-calendar and compliance consequences that will mature during the appeal.

Absent interim relief, the adverse consequences will occur on or before **January 20, 2026**, before this Court can complete meaningful review, and will risk practical nullification of any eventual appellate relief.

## III.    THE BALANCE OF EQUITIES FAVORS INTERIM RELIEF

The balance of equities favors interim relief. Appellant seeks only temporary, non-dispositive preservation of the last peaceable, uncontested administrative status quo ante while this Court considers the emergency request and the merits appeal from the January 7, 2026 final judgment. The relief requested is limited and reversible.

By contrast, denial will permit fixed, time-sensitive consequences to mature during the appeal, including exclusion from Spring 2026 registration beginning **January 20, 2026** and associated administrative effects tied to enrolled-status reporting. (***Dkt. 55***). Those consequences cannot be fully unwound after the fact and threaten to render later appellate relief ineffectual as a practical matter.

Appellees face no comparable, non-compensable harm from interim relief. Maintaining the existing administrative posture pending appeal imposes, at most, a temporary institutional burden that can be dissolved immediately if Appellees

prevail. Equity therefore favors preserving the status quo ante to prevent appeal-defeating consequences while this Court exercises review.

## IV.    THE PUBLIC INTEREST SUPPORTS PRESERVING THE STATUS QUO ANTE PENDING APPEAL

The public interest favors narrowly tailored interim relief that preserves the Court's ability to provide effective review of the district court's January 7, 2026 final judgment. Where fixed, external deadlines will mature during appellate review, courts have an institutional interest in preserving the practical availability of relief pending disposition. *Janvey v. Alguire, 647 F.3d 585, 596 (5th Cir. 2011)*.

The public interest also supports adherence to constitutional limits and procedural regularity in public higher education. This appeal presents serious legal questions concerning the pleading-stage dismissal of First Amendment retaliation and due-process claims arising from status-altering measures at a state institution.

Accordingly, interim preservation of the status quo ante protects appellate review by preventing irreparable harms from maturing during the pendency of this appeal from final judgment.

## **CONCLUSION AND RELIEF REQUESTED**

For the foregoing reasons, Appellant respectfully requests narrow interim relief under ***Fed. R. App. P. 8(a)(2)*** to preserve the status quo ante and maintain the practical effectiveness of appellate review. This motion is presented in a final-judgment posture following the district court's January 7, 2026 dismissal with prejudice and denial of pending ***Rule 65*** motions as moot. Absent interim relief, record-identified academic and compliance consequences will mature on a fixed timeline during the pendency of the appeal.

### **A. Administrative Stay**

As the least intrusive measure, Appellant first requests a brief administrative stay limited to preserving pre-deprivation conditions while the Court considers this emergency motion.

### **B. Injunction Pending Appeal**

Alternatively, Appellant requests a narrowly tailored injunction pending appeal directing Appellees to maintain the status quo ante during disposition of the merits appeal.

### **C. Specific Relief Requested**

Accordingly, Appellant respectfully requests that the Court:

1. **GRANT** a brief administrative stay pending resolution of this emergency motion; or, alternatively,

2. **GRANT** a narrowly tailored injunction pending appeal directing Appellees, during the pendency of this appeal, to:

   a. Maintain Appellant's enrollment and academic standing status in University records consistent with the status quo ante, including eligibility to register for and remain enrolled in Spring 2026 and preservation of continuous enrollment classification (to the extent applicable under University policy);

   b. Refrain from implementing or enforcing additional adverse administrative actions predicated on the challenged status change that would materially alter Appellant's enrollment classification during appellate review, including registration exclusion or enrollment holds tied to the challenged status change;

   c. Maintain institutional certification/reporting consistent with the status quo ante for SEVIS-related purposes, and refrain from transmitting additional adverse status changes predicated on the challenged action during appellate review.

3. **ORDER** that no bond is required, or alternatively require only nominal security, because the requested relief is limited, reversible, and preserves pre-deprivation conditions pending appeal.

4. **GRANT** such other and further relief as the Court deems just and proper to preserve effective appellate review.

The relief requested is directed solely to Appellees, is interim in nature, and seeks only to prevent fixed consequences from maturing during the pendency of appellate review.

Respectfully submitted,

/s/ Ehiremen Bennard Eriakha
Ehiremen Bennard Eriakha
Plaintiff-Appellant, pro se
1802 Jackson Ave. W., Apt. 83
Oxford, MS 38655
Tel: (662) 281-4676
Email: eriakhabernard@gmail.com
Dated: January 13, 2026

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to *Fed. R. App. P. 25(d)* and *Fifth Circuit Rule 25.2*, I certify that on
January 13, 2026, I served a true and correct copy of the foregoing Emergency
Motion for Administrative Stay and, in the Alternative, Injunction Pending Appeal
as follows:

Via electronic filing / email (Fifth Circuit Pro Se Filings):
Clerk's Office
United States Court of Appeals for the Fifth Circuit
Email: pro_se@ca5.uscourts.gov


Via email (Counsel for Appellees):
Paul B. Watkins, Esq.
Mayo Mallette PLLC
Email: pwatkins@mayomallette.com

Brooke Jackson, Esq.
Mayo Mallette PLLC
Email: bjackson@mayomallette.com


Executed this 13th day of January, 2026.

Respectfully submitted,

/s/ Ehiremen Bennard Eriakha
Ehiremen Bennard Eriakha
Plaintiff-Appellant, pro se
1802 Jackson Ave. W., Apt. 83
Oxford, MS 38655
Tel: (662) 281-4676
Email: eriakhabernard@gmail.com

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to ***Fifth Circuit Rule 27.3***, I certify that on January 13, 2026, I attempted in good faith to confer with counsel for Appellees—Paul B. Watkins, Esq., and Brooke Jackson, Esq., of Mayo Mallette PLLC—by email regarding the relief requested in the foregoing Emergency Motion for Administrative Stay and, in the Alternative, Injunction Pending Appeal.

Executed this 13th day of January, 2026, in Oxford, Mississippi.

Respectfully submitted,

/s/ Ehiremen Bennard Eriakha
Ehiremen Bennard Eriakha
Plaintiff-Appellant, pro se
1802 Jackson Ave. W., Apt. 83
Oxford, MS 38655
Tel: (662) 281-4676
Email: eriakhabernard@gmail.com

# <u>CERTIFICATE OF COMPLIANCE</u>

(*Fed. R. App. P. 27(d)(2), 32(a)(5)–(6); 5th Cir. R. 27.3, 32.1*)

Pursuant to ***Fed. R. App. P. 27(d)(2)*** and ***32(a)(5)–(6)***, and ***Fifth Circuit Rules 27.3*** and ***32.1***, I certify as follows:

## 1.  Type-Volume Limitation (Fed. R. App. P. 27(d)(2))

This Emergency Motion for Administrative Stay and, in the Alternative, Injunction Pending Appeal complies with the type-volume limitation of ***Fed. R. App. P. 27(d)(2)***. It does not exceed 5,200 words, excluding portions exempted by ***Fed. R. App. P. 32(f)***.

## 2.  Typeface and Type Style (Fed. R. App. P. 32(a)(5)–(6); 5th Cir. R. 32.1)

This motion complies with the typeface and type-style requirements of ***Fed. R. App. P. 32(a)(5)–(6)*** and ***Fifth Circuit Rule 32.1***. It was prepared in a proportionally spaced typeface using 14-point Times New Roman. Any footnotes appear in at least 12-point font.

## 3.  Emergency Compliance (5th Cir. R. 27.3)

This filing complies with ***Fifth Circuit Rule 27.3***. The motion states the nature of the emergency and the basis for expedited consideration. It is submitted in good faith and not for purposes of delay.

## 4. Privacy Redactions (Fed. R. App. P. 25(a)(5); 5th Cir. R. 25.2)

All required privacy redactions have been made in compliance with *Fed. R. App. P. 25(a)(5)* and *Fifth Circuit Rule 25.2*.

Executed on January 13, 2026, in Oxford, Mississippi.

Respectfully submitted,

/s/ Ehiremen Bennard Eriakha
Ehiremen Bennard Eriakha
Plaintiff-Appellant, pro se
1802 Jackson Ave. W., Apt. 83
Oxford, MS 38655
Tel: (662) 281-4676
Email: eriakhabernard@gmail.com

## <u>RULE 27.3 CERTIFICATION</u>

(*5th Cir. R. 27.3*)

Pursuant to *Fifth Circuit Rule 27.3*, Appellant certifies as follows:

1. The factual statements set forth in this Emergency Motion for Administrative Stay and, in the Alternative, Injunction Pending Appeal are true and correct to the best of Appellant's knowledge, information, and belief.

2. This motion seeks emergency relief and requires expedited consideration under *Fifth Circuit Rule 27.3*.

3. This motion is filed as soon as practicable in light of the time-sensitive consequences identified in the record.

4. On January 13, 2026, Appellant attempted in good faith to confer with counsel for Appellees by email regarding the relief requested in this motion.

5. This motion is filed in good faith and not for purposes of delay.

Executed this 13th day of January, 2026, in Oxford, Mississippi.

Respectfully submitted,

/s/ Ehiremen Bennard Eriakha
Ehiremen Bennard Eriakha
Plaintiff-Appellant, pro se
1802 Jackson Ave. W., Apt. 83
Oxford, MS 38655
Tel: (662) 281-4676
Email: eriakhabernard@gmail.com